### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | | |
|---|---|---|
| SIMON ORLANDO CHAVEZ JR., | § | |
|     Petitioner, | § | |
| | § | |
| v. | § | Cause No. EP-25-CV-471-KC |
| | § | |
| CHARISMA EDGE, *Warden*, FCI La Tuna, | § | |
|     Respondent. | § | |

### <u>MEMORANDUM OPINION AND ORDER</u>

Petitioner Simon Orlando Chavez Jr., Federal Prisoner Number 47033-177, challenges the execution of his sentence through a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241. Pet'r's Pet., ECF No. 1.[1] His petition is dismissed for failure to exhaust his administrative remedies.

### BACKGROUND

Chavez is a 50-year-old prisoner confined to the La Tuna Federal Correctional Institution in Anthony, Texas, which is within the jurisdiction of this Court. *See* Federal Bureau of Prisons, Find an Inmate, www.bop.gov/inmateloc (search for Reg. 47033-177, last visited June 29, 2026). His projected release date is December 13, 2032. *Id*.

In June 2011, Drug Enforcement Administration special agents were investigating methamphetamine trafficking in Lubbock, Texas. *United States v. Chavez*, 5:13-cr-00095-H-1 (N.D. Tex.), Factual Resume, ECF No. 132 at 2. They asked a confidential informant to contact Chavez and arrange to purchase one ounce of methamphetamine. *Id.* They watched as the confidential informant met Chavez's brother at a local club and purchased one ounce of methamphetamine for $1,600. *Id.*

---

[1] "ECF No." refers to the Electronic Case Filing number for documents docketed in this matter. Where a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.

Chavez later admitted he sent his brother to deliver the methamphetamine to the confidential informant. *Id.* He also admitted he knowingly and intentionally distributed and possessed with the intent to distribute 27.5 net grams of a mixture containing a detectable amount of methamphetamine. *Id.* at 3.

Chavez pled guilty to distribution and possession with intent to distribute methamphetamine and aiding and abetting, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 18 U.S.C. § 2. *Id.*, J. Crim. Case, ECF No. 207 at 1. He was sentenced on March 21, 2014, to 240 months' imprisonment "to be served consecutive to any sentence imposed in Case Nos. 43032-A and 47686 in the 47th District Court, Potter County, Texas," followed by five years' supervised release. *Id.* at 2, 3.

Chavez now alleges that Respondent Warden Chrisma Edge has not properly calculated his Good Time and First Step Act Credits which are used to determine his release date. *Id.* at 1. Specifically, he claims that he is entitled to First Step Act Credits for the time he spent in custody "between September 30, 2013, and September 18, 2025." *Id.* He further claims that he has not received a Second Chance Act placement, which could allow him to spend up to 365 days in a residential reentry center and six months in home confinement. *Id.* at 2, 3. He argues that he is not required to exhaust his administrative remedies because this action involves his unlawful and illegal imprisonment in violation of the Constitution and laws of the United States. *Id.* at 5. He asks the Court to issue an order directing Warden Edge to "properly provide all Good Time, First Step Act, and Second Chance Act Credits" to which he believes he is entitled. *Id.*

**STANDARD OF REVIEW**

A prisoner's "[c]hallenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)). A prisoner may attack "the manner in which his sentence is carried out or the prison authorities' determination of its duration" through a petition for a writ of habeas corpus under 28 U.S.C. § 2241. *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (citations omitted). To prevail, a prisoner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).

## ANALYSIS

### A. Exhaustion

Chavez maintains that "[e]xhaustion of [a]dministrative [r]emedies is not required for a petition for habeas corpus." *See* Pet'r's Pet., ECF No. 1 at 5. A search of Chavez's administrative remedy history shows that he has submitted three administrative remedy requests while in BOP custody, but none of them were related to his time credits. *See* Resp't's Resp., Ex. 1 (Decl. of Michael Caldwell), Attach. 5 (Administrative Remedy Generalized Retrieval), ECF No. Ex. 10-7. He argues that "[t]o require the exhaustion of administrative remedies in a habeas corpus claim would be to create a rule that abrogates a Constitutional right which is prohibited." Pet'r's Pet., ECF No. 5 at 5. He is wrong. *United States v. Setser*, 607 F.3d 128, 133 (5th Cir. 2010).

The Fifth Circuit has long held that the BOP should be permitted to administratively rectify an error if it fails to properly calculate a sentence. *Smith v. Thompson*, 937 F.2d 217, 219 (5th Cir. 1991). "In the event that a prisoner feels he has been improperly refused credit for time he has served in … custody, the prisoner must first 'seek administrative review of the computations of [his] credit, and, once [he has] exhausted [his] administrative remedies, [the] prisone[r] may only

3

then pursue judicial review of these computations.'" *Setser*, 607 F.3d at 133 (quoting *United States v. Dowling*, 962 F.2d 390, 393 (5th Cir. 1992)); *see also Falcetta v. United States*, 734 F. App'x 286, 287 (5th Cir. 2018) (holding that "dismissal for lack of jurisdiction was appropriate because [the petitioner] failed to show that he exhausted his sentencing credit claim fully through the multi-step BOP exhaustion procedure prior to filing his § 2241 petition."); *Rourke v. Thompson*, 11 F.3d 47, 49 (5th Cir. 1993) ("[T]his court has determined that a § 2241 petitioner "must first exhaust his administrative remedies through the Bureau of Prisons.") (quoting *United States v. Gabor*, 905 F.2d 76, 78 n.2 (5th Cir. 1990) (citations omitted)).

While there are exceptions to the exhaustion requirement "where the available administrative remedies either are unavailable or wholly inappropriate to the relief a prisoner seeks, or where the attempt to exhaust such remedies would itself be a patently futile course of action," such exceptions apply only in "extraordinary circumstances." *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (citations omitted). And a petitioner bears the burden of demonstrating such circumstances. When an inmate lacks a valid excuse for failing to exhaust his administrative remedies prior to filing a § 2241 petition, his petition should be dismissed. *See Thomason v. Guzik*, 226 F.3d 642, at *1 (5th Cir. 2000) (per curiam) ("As he has failed to demonstrate extraordinary circumstances which would warrant a waiver of the exhaustion requirement, we AFFIRM the district court's dismissal of the petition for failure to exhaust administrative remedies.").

Consequently, Chavez "must first pursue all available administrative remedies" before seeking relief under § 2241. *Fillingham v. United States*, 867 F.3d 531, 535 (5th Cir. 2017). And his exhaustion in this context means "proper exhaustion," including his compliance with all administrative deadlines and procedures established by the BOP. *Cf. Woodford v. Ngo*, 548 U.S

4

81, 90 (2006) (discussing exhaustion in the context of the Prison Litigation Reform Act).

The Court finds that Chavez has failed to exhaust his administrative remedies or carry his burden of proving the futility of an administrative review. *See Fuller*, 11 F.3d at 62 (explaining federal prisoners must exhaust "administrative remedies before seeking habeas relief in federal court under 28 U.S.C. § 2241."). It notes that dismissal on this basis alone is warranted. *See Rivkin v. Tamez*, 351 F. App'x 876, 877–78 (5th Cir. 2009) (per curiam) (affirming dismissal of prisoner's § 2241 petition for failure to exhaust administrative remedies). But even if Chavez had properly exhausted his claims, the Court would not grant him the § 2241 relief he seeks.

**B. Alternatively, Chavez's Petition Lacks Merit**

Chavez suggests that Warden Edge has not properly calculated his Good Time Credits ("GTCs"), First Step Act Earned Time Credits ("FTCs"), and Second Chance Act "credits." Pet'r's Pet., ECF No. 1 at 5.

**(1) Jail Credits**

After a district court sentences a federal offender, the BOP has the responsibility for administering the sentence." *United States v. Wilson*, 503 U.S. 329, 335 (1992) (citing 18 U.S.C. § 3621(a)). The BOP must credit a federal prisoner for the days spent in pretrial custody prior to the imposition of a sentence if that time is not credited against another sentence. 18 U.S.C. § 3585(b); *Leal v. Tombone*, 341 F.3d 427, 428 (5th Cir. 2003) ("The Attorney General, through the Bureau of Prisons (BOP), determines what credit, if any, will be awarded to prisoners for time spent in custody prior to the commencement of their federal sentences.").

In this case, the BOP gave Chavez no days of jail credit for the time he spent in detention before the commencement of his federal sentence on April 11, 2016, because he was paroled after

serving his state-imposed sentence. Resp't's Resp., Ex. 1 (Decl. of Michael Caldwell), Attach 2, ECF No. 10-2 at ¶ 10 and Public Information Inmate Data, ECF No. 10-4; *see* 18 U.S.C. § 3585(b)(1). The BOP also determined that Chavez's full-term expiration date on his 240-month sentence was April 10, 2036, without the application of any GCTs or FTCs.

### (2) Good Time Credits (GTCs)

A prisoner serving a term of imprisonment of more than one year may receive 54 days of GTCs for each year of imprisonment. 18 U.S.C. § 3624(b)(1).

Based on his 240-month sentence and disciplinary record, Chavez is projected to receive up to 849 days of GTCs if he maintains a clean disciplinary record until his release from prison. Resp't's Resp., Ex. 1 (Decl. of Michael Caldwell), Attach 2, ECF No. 10-2 at ¶ 17. Applying these GCTs to his full-term expiration date results in a conditional release date via GCTs of December 13, 2033.

### (3) First Step Act Earned Time Credits (FTCs)

The First Step Act allows an eligible prisoner to earn FTCs toward time in pre-release custody or supervised release. 18 U.S.C. § 3632(d)(4)(A). But it requires a prisoner to first undergo "a risk and needs assessment" to establish whether he has a "minimum, low, medium, or high risk for recidivism." *Id*. § 3632(a)(1). It gives qualifying prisoners the opportunity to earn ten days of FTCs for every 30 days of successful participation in Evidence Based Recidivism Reduction ("EBRR") programs and Productive Activities ("PAs"). *Id.* § 3632(d)(4)(A)(i). It allows qualifying offenders at a "minimum" or "low risk" of recidivating to earn an additional five days of FTCs if they do not increase their risk levels over two consecutive assessments. *Id*. § 3632(d)(4)(A)(ii). It permits qualifying inmates to apply FTCs toward pre-release placement in a

residential reentry center or home confinement. *Id.* § 3624(g)(2); 28 C.F.R. § 523.44(b)–(c). And, at the discretion of the Director, it permits qualifying prisoners to apply FTCs toward their early release to supervision. 18 U.S.C. § 3624(g)(3); 28 C.F.R. § 523.44(d).

Chavez was already serving his imposed sentence in BOP custody when the First Step Act was enacted on December 21, 2018. Resp't's Resp., Ex. 1 (Decl. of Michael Caldwell), Attach 2, ECF No. 10-2 at ¶ 11. He was scored at a minimum-risk recidivism level that same day. So, he began earning ten FTCs for every 30 days of successful participation in EBRR programs and PAs. After he maintained a minimum-risk recidivism level for two consecutive assessments, he began earning an additional five days of FTCs on July 17, 2019.

On July 1, 2022, Chavez's risk assessment changed to medium. Consequently, he lost the additional five days of FTCs. *Id.* at ¶ 12. His risk assessment changed to a low again on December 28, 2022. After his second consecutive low risk assessment, he began earning the additional five days of time credits on December 23, 2023. He was not allowed to accrue FTCs between June 4, 2025, and August 18, 2025, while he was being transferred to a different BOP facility.

As of December 19, 2025, Chavez had accumulated 1110 FTCs. *Id.* at ¶ 14. Because he has five years of supervised release following his imprisonment, his first 365 FTCs were applied toward his early release from imprisonment to begin his supervised release. With the application of his 365 FTCs, his statutory release date was amended from December 13, 2033, via GTC release, to December 13, 2032, via First Step Act release.

Chavez's remaining FTCs may be applied to his placement in prerelease custody in a residential reentry center ("RRC") or home confinement ("HC"). *Id.* at ¶ 13. However, under the First Step Act, he cannot apply these FTCs until his total FTCs are equal to the remainder of his

7

sentence. *Id.* at ¶ 13. If Chavez's First Step Act status remains the same, he is projected to earn a total of 1,345 FTCs towards his transfer to an RRC or HC. *Id*. at ¶ 17. This results in a First Step Act Conditional Placement Date of April 8, 2029. This date reflects the earliest date Chavez could be transferred to prerelease custody based on his accumulated FTCs alone.

**(4) Second Chance Act Placement**

The Second Chance Act authorizes the BOP to *consider*, to the extent practicable, placing an inmate who is nearing the end of his imprisonment in prerelease custody. 18 U.S.C. § 3624(c). Importantly, the statute only requires the BOP to *consider* placing an inmate in pre-release custody for up to twelve months or in home confinement for up to six months. It does not *require* the BOP to make such a placement. The Second Chance Act does not create any additional "credits."

Moreover, the BOP is responsible for designating "the place of the prisoner's imprisonment." *Id.* § 3621(b). Consequently, the BOP—not a court—is the proper place to direct a request for placement in an RRC or HC. *United States v. Sneed*, 63 F.3d 381, 388 n.6 (5th Cir. 1995) (citing 18 U.S.C. § 3624(c) (providing that the BOP has the authority to "place a prisoner in home confinement")). Additionally, release from institutional custody to a residential reentry center or home detention "is a change in conditions of confinement and not cognizable under § 2241." *Maldonado v. Rule*, No. 4:24-cv-0971-P, 2025 WL 476256, at *2 (N.D. Tex. Feb. 11, 2025) (citing *Melot v. Bergami*, 970 F.3d 596, 599 (5th Cir. 2020) (explaining a challenge to exclusion from program allowing home confinement is more properly brough as a *Bivens* action)).

The BOP is considering Chavez for 1,345 days in pre-release custody pursuant to the Second Chance Act. Resp't's Resp., Ex. 1 (Decl. of Michael Caldwell), Attach 2, ECF No. 10-2 at ¶ 17. This creates a Second Chance Act Recommended Placement Date for prerelease custody of

April 8, 2029. This date reflects the earliest date Chavez could be transferred to prerelease custody under the Second Chance Act alone, and with no FTCs applied.

**(5) Summary**

In summary, Chavez does not explain how the BOP erred in calculating his projected release date—and the Court, after reviewing the record, sees no errors. His conclusory allegations that Warden Edge miscalculated his GTCs, FTCs, and improperly denied him early placement in a community-based residential facility under the Second Chance Act are "insufficient for federal habeas relief [because he] has not met Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts, which requires a petitioner to plead facts in support of his claims." *Murphy v. Dretke*, 416 F.3d 427, 436–37 (5th Cir. 2005); *see also Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) ("conclusory allegations do not raise a constitutional issue in a habeas proceeding"). His argument that he is entitled to Second Chance Act "credits" is based on the erroneous premise that such credits exist.

## CONCLUSIONS AND ORDERS

The Court concludes that Chavez has failed to exhaust his administrative remedies. It further concludes that his claims lack merit as he has failed to explain how the BOP erred in calculating his projected release date. The Court accordingly enters the following orders:

**IT IS ORDERED THAT** Petitioner Simon Orlando Chavez, Jr.'s "Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241" (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE** for failure to exhaust his administrative remedies.

**IT IS FURTHER ORDERED THAT** all pending motions are **DENIED**.

**IT IS FINALLY ORDERED THAT** the District Clerk shall **CLOSE** this case.

**IT IS SO ORDERED**.

**SIGNED this 30th day of June, 2026.**

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE